**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RAYMOND PRICE,** | : | **CIVIL NO. 3:11-CV-1330** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Mariani)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PATRICK ZIRPOLI, et al.,** | : | |
| | : | |
| **Defendants** | : | |

**REPORT AND RECOMMENDATION**

I.   **Introduction**

This case, which comes before us on a motion for summary judgment filed by the defendant, Corporal Patrick Zirpoli of the Pennsylvania State Police, arises out of an unsuccessful prosecution of the plaintiff, Raymond Price, a former correctional officer at the Wayne County prison, on charges of alleged prisoner abuse. With Price's acquittal on these criminal charges, Price has now pursued civil rights malicious prosecution and false imprisonment claims against Corporal Zirpoli, and a fellow former correctional officer, Francis Schuster, who had initially accused Price of this wrongdoing.[1]

---

[1]During the pendency of this litigation Mr. Schuster passed away, and has been dismissed as a defendant in this lawsuit, leaving Corporal Zirpoli as the sole remaining defendant.

While this case ultimately resulted in the acquittal of Price, in the course of these criminal proceedings, the district attorney's office twice authorized the filing of criminal charges by Corporal Zirpoli against Price, finding on each occasion that there was probable cause to charge Price. Moreover, following two separate preliminary hearings, a district magisterial judge found probable cause to believe that Price engaged in acts of official oppression and criminal harassment, and bound those charges over for the trial that resulted in Price's acquittal. On these facts, Corporal Zirpoli could not have reasonably expected that his conduct–which had been approved by prosecutors and confirmed by the courts– would transgress clearly established constitutional norms. Accordingly, for the reasons set forth below, it is submitted that the defendant is entitled to qualified immunity in this case, and this motion for summary judgment should be granted.

## II.     <u>Statement of Facts and of the Case</u>

The pertinent facts in this case can be simply stated: In 2010, the defendant, Corporal Patrick Zirpoli, was an officer of the Pennsylvania State Police stationed at the Troop R-Honesdale Barracks. Corporal Zirpoli had served with the state police since 1992. In 2010, Francis Schuster and Raymond Price were corrections officers at the Wayne County Correctional Facility.

In early 2010, Wayne County District Attorney Michael Lehutsky contacted the state police to report allegations of physical abuse of inmates at the Wayne County Correctional Facility. Corporal Zirpoli was assigned to investigate these allegations. As part of this investigation Corporal Zirpoli received a copy of a letter authored by Officer Schuster and spoke to the warden of the Wayne County Correctional Facility, Kevin Bishop. Correctional Officer Schuster's letter identified several officers that were allegedly abusing inmates, and named inmate David Adsit as a victim of this abuse. Schuster's letter specifically identified the plaintiff, Raymond Price, as one of the correctional officers who had abused Adsit.

During his initial interview with Warden Bishop, the warden told Corporal Zirpoli that he and Sheriff Mark Steelman had interviewed Mr. Adsit, and Mr. Adsit told them that he was not being physically abused by anyone at the prison. However, subsequent investigation developed substantial evidence that confirmed allegations of inmate abuse by Price and others. Thus, on February 19, 2010, Corporal Zirpoli interviewed Officer Schuster. Officer Schuster confirmed the contents of his letter, and gave details of the abuse of inmates by staff, including Price, that was occurring at the prison, allegations that were incorporated into a written statement which Schuster provided to Corporal Zirpoli. Notably, in his written statement, Officer

Schuster specifically admitted that he had falsified reports in order to cover-up physical abuse of an inmate by Price.

On February 23, 2010, Corporal Zirpoli interviewed inmate Adsit, as well as Corrections Officers Scott Jaycox ("Officer Jaycox"), Dyan Gilligan ("Officer Gilligan"), Isadora Vanwyckhouse ("Officer Vanwyckhouse"), and Jason Thomas ("Officer Thomas"). Adsit told Corporal Zirpoli that he had been struck by Mr. Price and other officers for unknown reasons, but could not remember the specific dates or times of the incidents. Officer Thomas provided Corporal Zirpoli with copies of several letters he had sent to the administration at the Wayne County Correctional Facility expressing concern about the abuse of inmates that he has observed and identifying Price as a participant in this abuse. Officers Jaycox, Gilligan and Vanwyckhouse also provided written statements to Corporal Zirpoli. In his statement, Officer Jaycox identified Price as a correctional officer who had struck inmate Adsit in the past.

On March 9, 2010, Corporal Zirpoli attempted to interview three of the correctional staff suspected of engaging in acts of inmate abuse, Price, Sergeant Aspinall and Corrections Officer Frank Munno. Corporal Zirpoli was unable to locate Mr. Price for an interview, and found that Sergeant Aspinall was at his doctor's office attempting to get admitted into an alcohol rehabilitation program. Corporal Zirpoli

was able to interview Officer Munno, who denied all wrongdoing or any knowledge of others assaulting inmates. One month later, on April 6, 2010, Trooper Decker interviewed Sergeant Aspinall, who also denied any wrongdoing and provided nine pages of handwritten notes as well as various memoranda he had sent to Warden Bishop regarding Mr. Adsit.

As his investigation drew to a close, on April 7, 2010, Corporal Zirpoli met with Wayne County Assistant District Attorney Patrick Robinson ("ADA Robinson"). The Assistant District Attorney reviewed the Incident Report prepared by Corporal Zirpoli, and approved the filing of Official Oppression, Simple Assault and Harassment charges against Mr. Price and Sergeant Aspinall. With respect to Price, Corporal Zirpoli then prepared a criminal complaint and obtained an arrest warrant for Mr. Price that same day.

Corporal Zirpoli then made arrangements for Price to appear the next day before District Justice Ted Mikulak ("DJ Mikulak") for arraignment. Price drove to the arraignment, surrendered himself, and was never taken into custody by any police officer. Following his initial appearance, Price was released on $10,000 unsecured bail which provided that he was not allowed to go to the Wayne County Correctional Facility. The case was then scheduled for a preliminary probable cause hearing.

That hearing took place on April 26, 2010, before the district magisterial judge, Judge Mikulak. Corporal Zirpoli was present at the district magisterial judge's office, but was not in the courtroom during the evidentiary portion of the April 26, 2010, preliminary hearing, never reviewed the transcript of the April 26, 2010, preliminary hearing, and no one ever made him aware of what was said during that testimony. In the course of this preliminary hearing, Correctional Officers Schuster and Jaycox testified, along with inmate Adsit. Adsit's testimony largely focused upon an assault which allegedly occurred on or about January 1, 2010. In his testimony Adsit stated that Sergeant Aspinall and Price struck him with radio antennas leaving welts all over his body. (Doc. 56-7, p.139.) Adsit also testified that Aspinall punched him on January 1, 2010, and alleged that he had been punched in the past by Price, but denied being punched by Price on January 1, 2010.[2] At the conclusion of the April 26, 2010,

------

[2]For his part, Price argues in his opposition to this summary judgment motion that Adsit denied being subjected to any form of assault or physical abuse by Price during this preliminary hearing, and cites a single, narrow excerpt from that hearing in which Adsit denies being punched by Price on January 1, 2010. The full transcript of the hearing reveals, however, that Adsit also testified that Price had punched him on other occasions, and had beaten him with a radio antenna, leaving welts all over his body. Thus, the undisputed evidence does not support the suggestion that Adsit wholly recanted any claims of physical abuse by Price at this hearing. Quite the contrary, this testimony, taken as a whole, fully supported charges of harassment and official oppression against Price, particularly when viewed in light of the other corroborating testimony of other correctional officers.

preliminary hearing, Magisterial District Judge Mikulak bound the Harassment charge lodged against Price over for court, but dismissed the Official Oppression and Simple Assault charges.

Following this preliminary hearing, the Assistant District Attorney concluded that the magisterial district judge had erred when he dismissed the Official Oppression charge lodged against Price, reasoning that if there was a *prima facie* case as to Harassment, there was also a *prima facie* case as to Official Oppression. Accordingly, on April 27, 2010, the Assistant District Attorney directed that the first Harassment charge be withdrawn and approved the refiling of Official Oppression and Harassment charges against Mr. Price. No additional information was obtained by Corporal Zirpoli before criminal charges were refiled against Mr. Price. Instead, with respect to Mr. Price, Corporal Zirpoli prepared a second criminal complaint charging Mr. Price with Official Oppression and Harassment, and obtained a second arrest warrant for Mr. Price. Other than the deletion of the Simple Assault charge, the second criminal complaint was identical to the first criminal complaint.

Price was then arraigned on these charges and, once again, was released on $10,000 unsecured bail which provided that he was not allowed to go to the Wayne County Correctional Facility. Mr. Price voluntarily appeared at this arraignment and was never taken into custody by any police officer.

On June 1, 2010, a preliminary hearing on the Harassment and Official Oppression charges brought against Mr. Price in this second criminal complaint was held before Magisterial District Judge Mikulak.  At the conclusion of the June 1, 2010, preliminary hearing, the magisterial district judge found that the evidence established probable cause to believe that Price had committed acts of harassment and official oppression and bound both the Harassment and Official Oppression charges lodged against Price over for trial.  In February 2011, a criminal trial was held on the Harassment and Official Oppression charges filed against Mr. Price.  Corporal Zirpoli was not present at Mr. Price's criminal trial.  At the close of this trial the jury returned a verdict of not guilty.

This civil lawsuit then ensued.  (Doc. 1.)  In its current form, Price's sole remaining claims relate to Corporal Zirpoli.  Price alleges that the Corporal violated his civil rights by falsely arresting and maliciously prosecuting him on these state charges.  The defendant has now filed a summary judgment motion, alleging in part that he is entitled to qualified immunity on this false arrest/false imprisonment claim. This motion has been fully briefed by the parties, and is ripe for resolution.  For the reasons set forth below, it is recommended that this motion for summary judgment be granted.

### III.   <u>Discussion</u>

#### A.   <u>Rule 56–The Legal Standard</u>

The defendant has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality."  <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  <u>Id.</u> at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).  Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

### B.   Malicious Prosecution and False Arrest Claims–Questions of Custody and Probable Cause, Considerations of Qualified Immunity

In this case the gist of Price's remaining claims is that Corporal Zirpoli violated his constitutional rights through the unlawful arrest and malicious prosecution of the plaintiff.  These claims implicate Price's rights under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.  This summary judgment motion, challenging Price's malicious prosecution and false arrest civil rights claims, therefore, calls upon us to consider three related concepts that are integral to such claims–custody, probable cause and qualified immunity.

In order to establish and ultimately prevail on a § 1983 claim for malicious prosecution, a plaintiff must show:

(1) the defendants initiated a criminal proceeding;

(2) the criminal proceeding ended in the plaintiff's favor;

(3) the proceeding was initiated without probable cause;

(4) the defendants acted maliciously or for a purpose other

than bringing the plaintiff to justice; and

(5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  Thus, a plaintiff's claim will ultimately fail if he has not alleged facts sufficient to show that he suffered a "seizure," and was held in custody,  as that terms has been interpreted by the United States Court of Appeals for the Third Circuit in the context of a claim for malicious prosecution.

In DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005), the Third Circuit explained that a plaintiff bringing a claim for malicious prosecution under the Fourth Amendment must demonstrate a seizure as a fundamental element of the claim because "prosecution without probable cause is not, in and of itself, a constitutional tort." Id. at 603 (quoting Gallo v. City of Philadelphia, 161 F.3d 217, 222).  Indeed, "[t]he type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." Id.  As examples of the kinds of seizures that may support a claim for malicious prosecution, the Third Circuit observed that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure." Id.  In contrast,

the mere attendance at one's trial on criminal charges does not qualify as a seizure that will support a claim for malicious prosecution.  Id.

Likewise, under the Fourth Amendment, an arrest or prosecution is a constitutional violation that may be redressed under 42 U.S.C. § 1983 only if that prosecution is undertaken without probable cause . See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978).  Thus, in order to make out a false arrest claim, a plaintiff must demonstrate that police lacked probable cause to arrest.  Groman v. Twp. of Manalpan, 47 F.3d 628, 634 (3d Cir. 1995).  Similarly:

> To prove malicious prosecution under section 1983, a plaintiff must show that:  (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) *the proceeding was initiated without probable cause*; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)(emphasis added).

Therefore, whether characterized as a false arrest, or couched in terms of malicious prosecution, proof that probable cause was lacking is essential to any §1983 claim arising out of the arrest and prosecution of an individual.  For purposes of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to

warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). An arrest by a police officer "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Although "[t]he probable-cause standard is incapable of precise definition or quantification," Maryland v. Pringle, 540 U.S. 366, 371 (2003), all interpretations of probable cause require "a belief of guilt that is reasonable as opposed to certain." Wright v. City of Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005) (citing Hill v. California, 401 U.S. 797, 804 (1971)). Probable cause "does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction." Wright, 409 F.3d at 602 (quoting Adams v. Williams, 407 U.S. 143, 149 (1972)). Accordingly, the evidentiary standard for probable cause is significantly lower than that required for conviction. Id. (citing Michigan v. DeFillippo, 443 U.S.

31, 36 (1979)); see also Wilson v. Russo, 212 F.3d 781, 789 (3d Cir. 2000) (holding that probable cause requires only a "fair probability" that a person committed the relevant crime). Because an arrest is made with probable cause if at the moment it was made the facts and circumstances within the officer's knowledge "were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense," Beck v. Ohio, 379 U.S. 89, 91 (1964), the constitutional validity of an arrest does not turn on whether the suspect *actually* committed any crime, Johnson v. Campbell, 332 F.3d 199, 211 (3d Cir. 2003). Thus, "[t]he determination that probable cause exists is fundamentally a factual analysis that must be performed by officers at the scene. It is the function of the court to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984).

Finally, false arrest and malicious prosecution cases often entail consideration of the qualified immunity doctrine. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine protects public officials "from undue interference with their duties and from

potentially disabling threats of liability." Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case." Id. at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 129 S. Ct. at 820, and it may forego difficult constitutional issues and confer qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff)."). Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

In this case the gist of Price's remaining claims is that Corporal Zirpoli violated his constitutional rights through the unlawful arrest and malicious prosecution of the plaintiff. When assessing whether the defendant is entitled to qualified immunity on

these claims, we begin by noting that in this case the actions taken by Corporal Zirpoli were approved in advance by an Assistant District Attorney, and were affirmed by the Pennsylvania courts which found that probable cause existed to charge Price with harassment and official oppression. As a matter of law Corporal Zirpoli was entitled to rely upon the district attorney's prior approval of these charges in concluding that his conduct was lawful and proper, since: "Under Pennsylvania law, . . . '[c]riminal proceedings initiated on the advice of counsel are . . . presumed to be supported by probable cause when the advice of counsel was sought in good faith and the advice was given after full disclosure of the facts to the attorney.'" Williams v. Fedor, 69 F.Supp.2d 649, 670 (M.D.Pa. 1999). This presumption applies even if the prosecutor errs since "[t]he attorney's advice need not be correct." Williams, 69 F.Supp.2d at 670. See Pardue v. Gray, 136 F. App'x 529, 532 (3d Cir. 2005).

In this case, however, Zirpoli's probable cause determination was not simply supported by the opinion of the prosecutor. It was also twice affirmed by the courts which found probable cause to bind harassment and official oppression charges over for trial following two separate preliminary hearings. While these judicial findings of probable cause do not automatically confer qualified immunity upon the defendant, police officers whose probable cause determinations also bear the imprimatur of the courts are often cloaked with qualified immunity as a matter of law. See e.g., Wilson

v. Russo, 212 F.3d 781 (3d Cir. 2000); Sherwood v. Mulvihill, 113 F.3d 396 (3d Cir. 1997).  Indeed, in this setting a plaintiff must meet an exacting standard to defeat a police officer's claim of qualified immunity from damages.  In the face of a judicial finding of probable cause, "a plaintiff may succeed in a § 1983 action for false arrest [only] if the plaintiff shows, by a preponderance of the evidence:  (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'"  Wilson v. Russo,  212 F.3d 781, 786-87 (3d Cir. 2000).

### C.    Defendant Zirpoli Is Entitled to Summary Judgment

Judged against these benchmarks, we find that defendant Zirpoli is entitled to qualified immunity on Price's false arrest and malicious prosecution claims for at least three reasons.

First, we find that this claims fails because Price has not shown that he suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding, one of the essential elements of a false arrest claim.  Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).  In this case, Price was never arrested or incarcerated.  Instead, he was released on an unsecured appearance bond.  This is insufficient in our view to meet this element of the constitutional tort of false arrest

since a plaintiff bringing such a claim under the Fourth Amendment must demonstrate a seizure as a fundamental element of the claim in as much as "prosecution without probable cause is not, in and of itself, a constitutional tort." Id. at 603 (quoting Gallo v. City of Philadelphia, 161 F.3d 217, 222). Recognizing that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," but that the mere attendance at one's trial on criminal charges does not qualify as a seizure that will support a claim for malicious prosecution, DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005), we find that Price's release on nominal bail conditions does not constitute the type of seizure necessary for a Fourth Amendment claim.

In any event, we also conclude that there was ample probable cause to support the charges lodged against Price. For purposes of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Here the uncontested evidence reveals that the inmate victim, Adsit, and several other correctional officers implicated Price in physical and verbal abuse of prisoners entrusted to his care and custody. This litany of abuse, provided by a

number of independent eyewitnesses, certainly is sufficient to warrant a person of reasonable caution to conclude that the offenses of harassment and official oppression had been committed by Price.  This finding of probable cause, in turn, is fatal to Price's civil rights claims in this lawsuit since in order to prove malicious prosecution under section 1983, a plaintiff must show that:  (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) *the proceeding was initiated without probable cause*; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.   Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003)(emphasis added).

While Price attempts to undermine this probable cause showing by suggesting that inmate Adsit totally recanted any claims of physical abuse by Price during his preliminary hearing testimony, the record of those proceedings simply does not support this assertion.  In his testimony Adsit stated that Sergeant Aspinall and Price struck him with radio antennas leaving welts all over his body.  (Doc. 56-7, p.139.) Adsit also testified that Aspinall punched him on January 1, 2010, and alleged that he had been punched in the past by Price, but denied being punched by Price on January 1, 2010.  By seizing on Adsit's denial of a discrete incident of alleged abuse on a

particular day, Price ignores the entire thrust of Adsit's testimony, which was that he was subjected to on-going abuse by Price. This testimonial excerpt, therefore, does not fundamentally undermine the probable cause showings made here by the prosecution, and found by the Pennsylvania courts.

Those past probable cause findings, in turn, provide a third ground for dismissal of this case since defendant Zirpoli is plainly entitled to qualified immunity on these false arrest and malicious prosecution claims. On this score, we note that the actions taken by Corporal Zirpoli were specifically reviewed and approved by prosecutors. Standing alone, this is powerful evidence supporting a qualified immunity defense since "Under Pennsylvania law, . . . '[c]riminal proceedings initiated on the advice of counsel are . . . presumed to be supported by probable cause when the advice of counsel was sought in good faith and the advice was given after full disclosure of the facts to the attorney.'" Williams v. Fedor, 69 F.Supp.2d 649, 670 (M.D.Pa. 1999). See Pardue v. Gray, 136 F. App'x 529, 532 (3d Cir. 2005).

However, Corporal Zirpoli does not simply rely upon a prosecutor's opinion regarding probable cause. On two separate occasions a magisterial district judge conducted preliminary hearings in this matter, and made probable cause findings, binding harassment and official oppression charges lodged against Price over for trial. While Price was later acquitted of these charges, that acquittal does not alter the

judicial findings that probable cause existed to bring these charges.  Moreover, Price has not undermined these probable cause findings by showing:  "(1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;' and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause' " Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000).  Indeed, as we have noted Price's efforts to seize on a single excerpt from the testimony of the alleged victim, inmate Adsit, to undermine these multiple probable cause findings are wholly unavailing, and ignore the thrust of the inmate's testimony, testimony that was consistent with criminal conduct and was independently corroborated by other correctional officer witnesses.

On balance, then, we find that the defendant is entitled to qualified immunity in this case since probable cause existed to charge Price, Corporal Zirpoli presented the evidence to prosecutors, who authorized the filing of charges, and that decision was then reviewed by the state courts, and those court concluded that there was probable cause to pursue these charges to trial.

In short, given the undisputed fact that the state court found that police had probable cause in this case to charge Price with harassment and official oppression,

Price's claims of false arrest and malicious prosecution fail as a matter of law, and should be dismissed.

## IV.   <u>Recommendation</u>

For the foregoing reasons, IT IS RECOMMENDED THAT defendant Zirpoli's motion for summary judgment (Doc. 54.)  be granted.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 20th day of January 2016.

<u>**S/Martin C. Carlson**</u>
Martin C. Carlson
United States Magistrate Judge