THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RAYMOND PRICE,

    **Plaintiff**

v.

PATRICK ZIRPOLI, et al.,

    **Defendants**

3:11-CV-1330
(JUDGE MARIANI)

FILED
SCRANTON

JUL 1 5 2016

PER _____
DEPUTY CLERK

## MEMORANDUM OPINION

Presently before the Court is a Report and Recommendation ("R&R") (Doc. 82) by Magistrate Judge Carlson, in which the Magistrate Judge recommends granting the Motion for Summary Judgment (Doc. 54) of the remaining Defendant, Patrick Zirpoli. Plaintiff, Raymond Price, filed Objections (Docs. 83, 84) to the R&R, to which Defendant Zirpoli has responded (Doc. 90). Upon *de novo* review of Magistrate Judge Carlson's R&R (Doc. 82), this Court will overrule Plaintiff's Objections and adopt the R&R for the reasons that follow.

First, Plaintiff incorrectly asserts that the Magistrate Judge's R&R recommends that summary judgment be granted to Defendant Zirpoli solely on the basis of qualified immunity. (Doc. 84, at 6). Instead, the Report and Recommendation, while finding that the Defendant is entitled to qualified immunity in this case, also determined that the Plaintiff's claims of false arrest and malicious prosecution fail as a matter of law:

> In short, given the undisputed fact that the state court found that police had probable cause in this case to charge Price with harassment and official oppression, Price's claims of false arrest and malicious prosecution fail as a matter of law, and should be dismissed.

(Doc. 82, at 24-25).

The Magistrate Judge correctly determined that the Plaintiff's false arrest and malicious prosecution claims fail as a matter of law. The undisputed record evidence shows that the Plaintiff did not suffer "a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding," *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).

The Magistrate Judge also correctly determined that a claim for malicious prosecution requires that the Plaintiff sustain a seizure as a necessary element of his claim:

> In *DiBella v. Borough of Beachwood*, 407 F.3d 599 (3d Cir. 2005), the Third Circuit explained that a plaintiff bringing a claim for malicious prosecution under the Fourth Amendment must demonstrate a seizure as a fundamental element of the claim because "prosecution without probable cause is not, in and of itself, a constitutional tort." *Id.* at 603 (quoting *Gallo v. City of Philadelphia*, 161 F.3d 217, 222 [3d Cir. 1998]). Indeed, [t]he type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." *Id.*

(Doc. 82, at 13).

Plaintiff's own testimony shows the absence of a seizure. The Plaintiff, at his deposition, testified:

> Q. At any time between the filing of the first set of charges and the jury's not guilty verdict, were you ever in any way taken into custody by any police officer?
> A. No, ma'am.
> Q. Are you aware of whether any warrants were out for you or anything like that?
> A. No, ma'am. What happened was when I found out that I was going to be arrested, I voluntarily showed up at the State Police barracks in

2

> Honesdale, got fingerprinted, got my picture taken and that was it. And I left. I was never brought in for an interview. I was never brought in to find out what happened by anybody.

(Dep. of Price, Doc. 56-1, at 33:2-15). Plaintiff also testified that he drove to the arraignment; no police officer came and transported him to the hearing; he was never "cuffed"; and that he was released on $10,000 unsecured bail so that he did not have to post any money. (*Id.* at 23:25-24:1-12). Price further testified that other than not being allowed on the property of the Wayne County Correctional Facility, no other restrictions were imposed upon him. (*Id.* at 24:15-23).

In *Gallo v. City of Philadelphia,* the Third Circuit found that a criminal defendant who "had to post a $10,000 bond, [] had to attend all court hearings including his trial and arraignment, [] was required to contact Pretrial Services on a weekly basis, and [] was prohibited from traveling outside New Jersey and Pennsylvania" had in fact been seized under the Fourth Amendment. 161 F.3d 217, 222 (3d Cir. 1998). The Circuit subsequently clarified, in more general terms, that, while "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure," merely having to attend one's criminal trial does not. *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). In the latter case, in finding that no seizure sufficient to support a § 1983 claim occurred under the facts presented, the *DiBella* court noted that the civil plaintiffs "were only issued a summons; they were never arrested; they never posted bail; they were

free to travel; and they did not have to report to Pretrial Services. Their liberty was restricted only during the Municipal Court trials . . . ." *Id.*

> Supreme Court decisions provide that a seizure is a show of authority that restrains the liberty of the citizen, *see, e.g. California v. Hodari D.*, 499 U.S. 621, 625-27, 111 S.Ct. 1547, 1550-51, 113 L.Ed.2d 690 (1991), or a "government termination of freedom of movement intentionally applied." *County of Sacramento v. Lewis*, 523 U.S. 833, ---, 118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043 (1998). The case law also shows that an actual physical touching is not required to effect a seizure. *See Hodari D.*, 499 U.S. at 626, 111 S.Ct. at 1551.

*Gallo*, 161 F.3d at 223.

The Report and Recommendation notes that:

> Price was never arrested or incarcerated. Instead, he was released on an unsecured appearance bond. This is insufficient in our view to meet this element of the constitutional tort of false arrest. Since a plaintiff bringing such a claim under the Fourth Amendment must demonstrate a seizure as a fundamental element of the claim in as much as "prosecution without probable cause is not, in and of itself a constitutional tort." [*Marasco*, 318 F.3d] at 603 (quoting *Gallo v. City of Philadelphia*, 161 F.3d 217, 222).

(Doc. 82, at 20-21). The Magistrate Judge accordingly found that "Price's release on nominal bail conditions does not constitute the type of seizure necessary for a Fourth Amendment claim." (*Id.* at 21).

The Court agrees with the analysis of the Magistrate Judge and finds that no seizure occurred of the Plaintiff sufficient to implicate the Fourth Amendment.

Second, the Magistrate Judge correctly determined that probable cause existed for the charges brought against Plaintiff.

"Probable cause exists where the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). In reaching this conclusion, the arresting officer's state of mind is irrelevant; all the factfinder must ask is whether the facts available to the arresting officer objectively gave rise to a finding of probable cause at the time the arrest was made. *Whren v. United States*, 517 U.S. 806, 812-13, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (summarizing case law and concluding that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

Plaintiff asserts in his Objections that "the Criminal Complaint filed by Zirpoli on April 7, 2010, specifically named Schuster, and no other individual, as the source of the allegations of abuse against Plaintiff." (Doc. 84, at 8). But the record shows that with respect to the complaint that Zirpoli filed against the Plaintiff to Complaint No. R03-0763140 (Docs. 56-6, 56-9), Zirpoli conducted an extensive investigation and took statements from not only Francis Schuster, but also from Corrections Officer Scott Edward Jaycox, Corrections Officer Dyan J. Gilligan, Corrections Officer Isadora Racheal VanWyckhouse and Corrections Officer Jason L. Thomas. (Decl. of Zirpoli, Doc. 56-5, at 6-7). Additionally,

Defendant Zirpoli, along with Trooper Robert Stoud, conducted an interview of Corrections Officer Justin James Rivardo. (*Id.* at 8). Zirpoli in his Investigation Report further notes:

> On 03/09/10 interviews were to be conducted with Aspinall, Price, and Munno. An attempt was made to locate Price with negative results. I found that Aspinall was at the doctors attempting to get him into an alcohol rehabilitation program. I was able to contact Munno on the telephone; he was interviewed at 1230 hrs at PSP Honesdale.

(*Id.*). The Defendant also interviewed and took statements from inmates David Paul Adsit and Frank Michael Piccolo. (*Id.* at 6, 9).

Zirpoli's Incident Report No. R03-0763140 also includes the statement of Officer Schuster to Warden Bishop regarding abuse of inmate Adsit by Corrections Officers Aspinall, Munno, and Price (Doc. 56-5, at 17) and the statement of Corrections Officer Thomas to the Warden that he observed "Sgt. Aspinall aggravating inmate [Adsit] by lashing inmate with boot laces to his neck area while putting restraints on inmate, c/o Price striking inmate in the thigh area with his knee while inmate was on the floor in cell # 130C in intake, inmate was being compliant while being abused during these actions." (*Id.* at 19). In addition, the Incident Report file of the Defendant includes the statement of Corrections Officer Thomas regarding inmate Piccolo and the handwritten witness statements of Corrections Officers VanWykhouse, Jaycox, Gilligan and Hiller. (*Id.* at 20-23, 27-41). These statements, collected by Defendant Zirpoli in the course of his investigation, include specific assertions of physical abuse by Plaintiff Price of inmate Adsit. For example, the typewritten statement of Schuster to Warden Bishop dated January 31, 2010 (*id.* at 17-18), states that

he observed "Officer Price strike Inmate Adsit with open and closed hands and foreign objects encompassing towels, flashlights and in one instance, striking Inmate Adsit in the genitals with a pair of handcuffs." The statement of Corrections Officer Thomas, as noted, contains his observation of Plaintiff Price "striking inmate in the thigh area with his knee while inmate was on the floor in cell # 130C in intake, inmate was being compliant while being abused during these actions." (*Id.* at 19). The handwritten statement of Corrections Officer Jaycox (*id.* at 27-29) states that he observed Sgt. Aspinall and Officer Price "striking inmate Adsit with the antennas of their radios on his legs."

Accordingly, there is no dispute of material fact as to the existence of probable cause for the Criminal Complaints brought against Price in this case. As the Magistrate Judge stated:

> Here the uncontested evidence reveals that the inmate victim, Adsit, and several other correctional officers implicated Price in physical and verbal abuse of prisoners entrusted to his care and custody. This litany of abuse, provided by a number of independent eyewitnesses, certainly is sufficient to warrant a person of reasonable caution to conclude that the offenses of harassment and official oppression had been committed by Price. This finding of probable cause, in turn, is fatal to Price's civil rights claims in this lawsuit since in order to prove malicious prosecution under section 1983, a plaintiff must show: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) *the proceeding was initiated without probable cause*; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

(Doc. 82, at 21-22) (italics in original).

Further, it bears noting that the Plaintiff presented no evidence that Zirpoli acted maliciously or for a purpose other than bringing the Plaintiff to justice. Again, the deposition testimony of the Plaintiff:

> Q. Do you any reason to believe or any information that would suggest that Trooper Zirpoli did not think that the charges he filed were proper?
> A. I do not. But I'm wondering why, as my Co-Defendant in this case was brought in to speak with the State Trooper, that I wasn't.

(Dep. of Price, at 35:17-22).

The Magistrate Judge correctly stated and applied the standard for determining whether probable cause existed for the Defendant to file the Criminal Complaints against Price that he did.

The Plaintiff further objects to the R&R's finding that probable cause existed for the Criminal Complaints against him based on inmate Adsit's testimony at the preliminary hearing held on April 26, 2010 where he denied that Officer Price punched him on January 1st of that year. (Doc. 84, at 8, 11). Plaintiff complains that "[d]espite Adsit's statements to the Warden and Sheriff and his sworn testimony at the Preliminary Hearing held on April 26, 2010, that he had never been assaulted or abused by Plaintiff or anyone else at the prison, Zirpoli filed a second Criminal Complaint against Plaintiff charging him with Harassment and Official Oppression." (*Id.* at 10). Plaintiff argues that the second Criminal Complaint contains specific allegations of repeated assaults and abuse "despite Adsit having testified at the Preliminary Hearing that he had not been physically abused by anyone at the prison." (*Id.* at

8

11). These statements are purposeful mischaracterizations of the record and deserve condemnation. The testimony of inmate Adsit at the preliminary hearing held on April 26, 2010 is as follows:

> Q. You said that you were hit with radio antennas and then you said –who hit you with the radio antennas?
> A. Sergeant Aspinall and CO Price.
> Q. Did you receive any injuries as a result of that?
> A. Yes, sir. I had welts all over my body.
> Q. You went to Wayne Memorial that night, right?
> A. Either Wayne Memorial or Marian.
>
> . . . .
>
> Q. Did anybody anywhere at any time see those welts?
> A. I believe a CO saw them, one of the COs saw them.
> Q. Which CO would that have been?
> A. Jaycox.
>
> . . . .
>
> Q. All right. Now, you also said there was a time when you were punched in the chest and in the arms. Officer Price didn't do that to you?
> A. No, sir.
> Q. So he never punched you?
> A. He punched me before in the stomach.
> Q. On January 1st, did Officer Price punch you?
> A. No.
> Q. So when you were talking about being punched in the chest and in the arms and wherever else on January 1st; stomach, arms, legs, punching and everything, Officer Price never did that to you?
> A. No, sir.

(Doc. 56-7, at 138:8-18; 139:2-7, 14-25; 140:1-3).

The Magistrate Judge committed no error in rejecting the Plaintiff's wholly unsupported claim that inmate Adsit recanted his claims of physical abuse by Price during his preliminary hearing testimony:

> While Price attempts to undermine this probable cause showing by suggesting that inmate Adsit totally recanted any claims of physical abuse by Price during his preliminary hearing testimony, the record of those proceedings simply does not support this assertion. In his testimony Adsit stated that Sergeant Aspinall and Price struck him with radio antennas leaving welts all over his body. (Doc. 56-7, p. 139). Adsit also testified that Aspinall punched him on January 1, 2010, and alleged that he had been punched in the past by Price, but denied being punched by Price on January 1, 2010. By seizing on Adsit's denial of a discrete incident of alleged abuse on a particular day, Price ignores the entire thrust of Adsit's testimony, which was that he was subjected to on-going abuse by Price. This testimonial excerpt, therefore, does not fundamentally undermine the probable cause showings made here by the prosecution, and found by the Pennsylvania courts.

(Doc. 82, at 22-23).

That the Plaintiff's mischaracterization of the record is purposeful is borne out by the exchange between Plaintiff's counsel and Defendant Zirpoli's counsel at Zirpoli's deposition. There, in response to Plaintiff's counsel's question to Zirpoli inquiring whether there had come a time when "you learned that Adsit had denied striking Officer Price," counsel for Zirpoli objected, stating: "I'm going to just object to the form of the question, that he denied it. The quoted portion of the transcript is only as to January 1st. It's not at an all-encompassing he never touched me statement. It's on January 1st." (Dep. of Zirpoli, Doc. 56-3, at 59:15-23). In response, Plaintiff's counsel stated: "*I stand corrected. Did that ever*

*come to your attention, that he denied being struck by Officer Price on January 1?*" (*Id.* at 59:24-60:2) (italics added).

Quite clearly, Plaintiff's counsel knew that Adsit's testimony wherein he denied having been struck by Plaintiff Price was limited to January 1, 2010. Thus, to mischaracterize the record as Plaintiff has done in his Objections and brief in support thereof by arguing that Adsit testified at the preliminary hearing "that he had not been physically abused by anyone at the prison" (Doc. 84, at 11), displays a lack of candor toward this Court.

Finally, Plaintiff's Objections with respect to the Magistrate Judge's finding that Defendant is entitled to qualified immunity are entirely without merit. As the Magistrate Judge points out in his R&R, the actions taken by Zirpoli "were approved in advance by an Assistant District Attorney, and were affirmed by the Pennsylvania courts which found that probable cause existed to charge Price with harassment and official oppression." (Doc. 82, at 19). In the same vein, the Magistrate Judge's finding that Zirpoli was entitled to rely upon the District Attorney's prior approval of the charges presents a correct application of Pennsylvania law, as quoted in *Williams v. Fedor*, 69 F.Supp.2d 649, 670 (M.D. Pa. 1999).

Zirpoli's finding of probable cause, in addition to being supported by the opinion of the Assistant District Attorney, was affirmed in two separate preliminary hearings with respect to the charges of harassment and official oppression. Nothing in the record evidence creates any dispute of fact calling into question whether Zirpoli knowingly and

11

deliberately or with a reckless disregard for the truth, made false statements or omissions in seeking the approval of the District Attorney for the issuance of a Criminal Complaint against Price. See *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) ("In light of these facts, the only way that Wilson can succeed is if he proffers evidence that Russo recklessly disregarded the truth in his warrant application, *and* that a warrant application based on what Russo should have told the judge would have *lacked* probable cause.") (italics in original).

Here, there is no evidence that Zirpoli recklessly disregarded the truth or made knowing and deliberately false statements or omissions in his investigation or in his submission to the District Attorney for approval of a Criminal Complaint against Price.

Accordingly, for the foregoing reasons, the Report and Recommendation of Magistrate Judge Carlson (Doc. 82) will be adopted and summary judgment will be entered in favor of Defendant Zirpoli and against Plaintiff Price.

A separate Order follows.

/s/ Robert D. Mariani
Robert D. Mariani
United States District Judge